USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/16/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Doe,

                Petitioner,

    –v–

Attorney General William Barr, *et al.*,

                Respondents.

19-cv-4887 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Petitioner John Doe has filed a writ of habeas corpus under 28 U.S.C. § 2241 and moved to proceed under pseudonym in this litigation. When Doe was released on bond from civil detention in 2019, Immigration and Customs Enforcement imposed an order of supervision upon him, governing the terms of his release and subjecting him to various requirements. He now challenges that order of supervision as violative of the Administrative Procedure Act and the Fifth Amendment's Due Process Clause. For the reasons that follow, the Court GRANTS his motion to proceed under pseudonym, but DENIES his writ of habeas corpus.

    **I.    BACKGROUND**

        **A.  Factual Background**

    The following facts are undisputed: Petitioner John Doe is a "42-year-old Haitian born man who entered the United [States] over 20 years ago." Petition for Habeas Corpus, Dkt. No. 2, ¶ 24. Petitioner was admitted on a six-month visitor visa in 1999, but he overstayed in the United States for years. Declaration of Officer Michael P. O'Reilly, Dkt. No. 24, ¶¶ 4, 5.

    In 2011, the New York Police Department arrested Doe and charged him with assault in the first degree and possession of a controlled substance. *Id.* ¶ 6. Doe eventually pleaded guilty

1

to lesser charges, was sentenced to a conditional discharge, and an order of protection was entered against him.  *Id.*  The next year, the NYPD again arrested Doe and charged him with assault in the second degree.  *Id.* ¶ 7.  Around this time, he was also charged with bail jumping.  *Id.* ¶ 8.  He later pleaded guilty to these offenses and was sentenced to about five years' imprisonment and another five years of post-release supervision.  *Id.* ¶¶ 7, 8.

While in state custody, ICE served Doe with a Notice to Appear, the charging document used to begin removal proceedings.  *Id.* ¶ 9.  The NTA charged Doe as removable under 8 U.S.C. § 1227(a)(1)(B), "as an alien admitted as a non-immigrant who remained in the United States for a time longer than permitted."  *Id.*  In response, Doe applied for relief from removal, arguing that he was entitled to asylum, withholding of removal, and protection under the United Nations Convention Against Torture.  *See* Dkt. No. 2, Ex. 3.  Upon completion of his state sentence, Doe was transferred into ICE custody for purposes of his completing his removal proceedings.  O'Reilly Decl. ¶ 10.

In March 2016, Doe was afforded a bond hearing before an immigration judge pursuant to the Second Circuit's now-vacated decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018).  O'Reilly Decl. ¶ 11.  The immigration judge granted Doe release on a $10,000 bond; Doe then posted bond and was soon released.  *Id.*

In March 2017, ICE learned that Doe had again been arrested by the NYPD and thus arrested him.  *Id.* ¶ 12.  Doe was eventually transferred to Bergen County Jail in New Jersey.  *Id.*  Later that year, an immigration judge denied Doe's application for relief from removal and ordered him removed to Haiti.  *Id.* ¶ 13.  Doe appealed that decision to the Board of Immigration Appeals, but the Board dismissed his appeal, making his order of removal final.  *Id.*  In 2018, Doe appealed the Board's decision to the Second Circuit and filed a stay of removal, which

"trigger[ed] the government's forbearance policy with the Second Circuit." *Id.* ¶ 15; *see In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012) ("While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur.").

While his appeal at the Second Circuit was pending, the Third Circuit held that individuals detained under 8 U.S.C. § 1231 are generally entitled to receive a bond hearing after being detained for six months. *See Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018). The Third Circuit further held that the Government bears the burden at such hearings to demonstrate dangerousness or flight risk by clear and convincing evidence. *Id.* at 224 n.12. Because Doe was held in New Jersey, under the Third Circuit's jurisdiction, he quickly received a bond hearing. O'Reilly Decl. ¶ 17. An immigration judge concluded that the Government had failed to meet its burden and set a $2,000 bond for Doe. *Id.*

On October 25, 2018, Doe posted the bond. *Id.* ¶ 18. The events that followed are crucial to this habeas petition. Doe represents that "after the posting of the $2,000.00 bond, but prior to his release from detention, ICE met with Mr. Doe – outside the presence of his counsel – and that he would be placed on an [order of supervision] and that if he refused he would not be released." Petition ¶ 49. As Doe explains in his declaration, an ICE officer "presented [him] with the Order of Supervision" and "asked [him] if [he] understood." Dkt. No. 2, Ex. 5, Doe Decl., ¶¶ 5, 6. Doe informed the officer that his attorney had told him he was granted bond, that he therefore did not understand why he was being given an order of supervision, and asked to speak to his attorney. *Id.* ¶ 6. The ICE officer said "if you do not sign this you will not get released." *Id.* Doe "got very scared when the ICE Officer told me that if I did not sign the paper

3

I would not be released," and he therefore signed.  *Id.* ¶ 7; *see also* Ex. 6 (order of supervision) at 3 (Doe's signature).

The Government does not directly dispute this account of the events.  *See* O'Reilly Decl. ¶ 18 ("It is unknown to me what was said to Doe at the time of his release.").  As explained by Deportation Officer O'Reilly, "because Doe had a final order of removal and was being released after receiving a bond hearing under *Guerrero-Sanchez*, the process for release, including the imposition of an [order of supervision,] was new in light of the Third Circuit's recent decision, issued roughly one month earlier."  *Id.* ¶ 18.  He adds that "in the event that an alien with a final order of removal is to be released by ICE, it is the normal procedure for ICE to place such alien on an order of supervision upon their release from detention, per . . . 8 U.S.C. § 1231(a)(3)."  After Doe signed the order of supervision, he was released from ICE custody.

### B. Procedural History

Seven months after his release, Doe filed this habeas petition under 28 U.S.C. § 2241, challenging ICE's imposition of the order of supervision.  *See* Dkt. No. 2.  The Part I judge, Judge Koeltl, permitted Doe to file some supporting documents under seal and to proceed pseudonymously.  Dkt. Nos. 1, 4.  Doe's petition raises two substantive arguments: He argues that the imposition of a supervision order, notwithstanding his release on bond, violates his procedural due-process rights.  And for the same reasons, he argues that the supervision order violates the Administrative Procedure Act.

A few days after filing his habeas petition, Doe moved for a temporary restraining order. Dkt. No. 13.  He sought "an Order from the Court enjoining the Respondents from conditioning his liberty upon compliance with the Order of Supervision."  *Id.* at 1.  On May 30, 2019, the Court held oral argument on Doe's request.  At that conference, the Government represented that

ICE would not re-detain Doe while his petition for review was pending with the Second Circuit, unless he committed a crime.  The parties also agreed on an expedited schedule for briefing.  The parties' agreement on these issues resolved Doe's motion for emergency relief.  *See* Dkt. No. 18.  Doe's motion to proceed under pseudonym and petition for habeas corpus are now before the Court.

## II.     DOE'S MOTION TO PROCEED UNDER PSEUDONYM IS GRANTED

To begin, Doe asks to proceed under pseudonym in this litigation, and the Government does not oppose his request.  Dkt. No. 20.  In general, "[t]he title of a complaint must name all the parties."  Fed. R. Civ. P. 10(a).  Rule 10(a) "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008).  The use of pseudonyms in place of the true identities of the parties "runs afoul of the public's common law right of access to judicial proceedings . . . a right that is supported by the First Amendment."  *Doe v. Del Rio*, 241 F.R.D 154, 156 (S.D.N.Y. 2006) (citation omitted).

However, courts have recognized an exception to the rules requiring disclosure of party identities in cases that implicate individual privacy concerns.  In determining whether a party may proceed anonymously, the Court must consider a series of non-exhaustive factors:

> 1. whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> 2. whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> 3. whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

5

    4. whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age;

    5. whether the suit is challenging the actions of the government or that of private parties;

    6. whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

    7. whether the plaintiff's identity has thus far been kept confidential;

    8. whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity;

    9. whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

    10. whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*See Sealed Plaintiff*, 537 F.3d at 190 (cleaned up). "[A] district court is not required to list each of the factors or use any particular formulation as long as . . . the court balance[s] the interests at stake in reaching its conclusion." *Id.* at 191 n.4. And a plaintiff seeking anonymity must base her allegations on more than just "mere speculation." *Doe v. Skyline Auto.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (citing *United States v. UCB, Inc.*, No. 14-cv-2218 (TPG), 2017 WL 838198, at *3 (S.D.N.Y. 2017)).

    Here, these factors uniformly counsel in favor of granting the petitioner's request. To begin, the underlying facts of Doe's petition are highly sensitive and personal, involving his HIV status, history of abuse, and history of mental illness. Additionally, Doe is seeking relief from removal to Haiti because he faces risk of harm, persecution, and torture on grounds of his HIV status, mental illness, and sexual orientation. If his name and this information were made publicly available, it could place him in danger if he ever returns to Haiti. Moreover, Doe has

thus far been proceeding under pseudonym. And in previous related litigation in this District, Judge Deborah Batts permitted Doe to proceed under pseudonym. *See* Dkt. 18-cv-8356 (S.D.N.Y.) (DAB), Dkt. No. 9. The Court thus grants Doe's unopposed request, and allows him to proceed anonymously in this litigation. *Accord Doe v. Townes*, No. 19-cv-8034 (ALC), 2020 WL 2395159, at *7 (S.D.N.Y. May 12, 2020) ("The Court recognizes the difficulty victims face in coming forward with their stories and seeking justice.").

### III.  DOE IS NOT ENTITLED TO HABEAS RELIEF

The Court turns next to Doe's habeas petition. Doe is entitled to habeas relief if his "custody [is] in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Individuals may rely on this provision to "seek[] release from post-removal-period detention and supervision." *Lawrence v. Gonzales*, No. 12-cv-4076 (KBF), 2013 WL 1736529, at *2 (S.D.N.Y. Apr. 19, 2013) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). And neither party disputes that even though Doe is not currently incarcerated, the order of supervision renders him "in custody" for purposes of his habeas petition, as the Supreme Court has repeatedly held that the in-custody requirement is met where the Government restricts a petitioner's freedom of action or movement. *See, e.g.*, *Jones v. Cunningham*, 371 U.S. 236 (1963); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (parolee's challenge to the validity of his conviction can be maintained if a "collateral consequence" of the conviction still exists).

The Court must thus determine whether Doe's order of supervision violates the Constitution or federal law. Doe advances two arguments along these lines, but neither succeeds.

### A. The Statutory and Regulatory Framework

The crux of Doe's habeas petition is that the agency lacked statutory or regulatory authority to impose the order of supervision. The Court therefore begins by sifting through the relevant statutory provisions and regulations.

The first is 8 U.S.C. § 1231(a)(6), which provides that "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." Section 1231(a)(3), in turn, provides that "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Paragraph (3) also imposes a few requirements for such regulations:

> The regulations shall include provisions requiring the alien—
>
> (A) to appear before an immigration officer periodically for identification;
>
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>
> (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
>
> (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien. 1231(a)(3)(A)–(D).

*Id.* § 1231(a)(3).

In other words, the immigration laws provide the Department of Homeland Security authority to promulgate regulations governing the release of aliens and the conditions of their

8

supervision. And in conferring that regulatory authority, Congress defined its ambit, directing the agency to include certain parameters.

The agency has used that authority to promulgate two regulations that are relevant here. The first is 8 C.F.R. § 241.4, which describes the factors agency officials use in making bond determinations for this subset of aliens. *See* 8 C.F.R. § 241.4(e) (listing criteria that *must* be considered, such as dangerousness and risk of flight); *id.* § 241(f) (listing criteria that *may* be considered, such as psychiatric evidence and ties to the United States). The second is 8 C.F.R. § 241.5, which mandates the agency to impose orders of supervision on aliens released according to the first regulation. *See id.* § 245.5 ("An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision."). And the regulation mandates that the agency impose certain conditions upon the alien, allows officers to set bonds, and permits the agency to authorize aliens released on orders of supervision to work. *Id.*

### B. Doe Was Not Released Under These Regulations

It is beyond dispute that the immigration laws provide the agency authority to impose conditions of supervision on certain aliens. 8 C.F.R. § 241.5. However, Doe was not released under these regulations. Instead, Doe was released on bond as a result of the Third Circuit's decision in *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018). In that decision, the Third Circuit held that aliens detained pursuant to 8 U.S.C. § 1231(a) are entitled to a bond hearing after "prolonged detention," which the court generally defined as a period of six months or more. *Id.* at 219. Less than one month after the Third Circuit issued its decision, the Government afforded Doe a bond hearing. *See* Dkt. No. 26-1 (transcript of bond hearing). At that hearing, the immigration judge recognized that Doe was at the time "in custody in the jurisdiction of the Third Circuit and thus [was] seeking a bond determination pursuant to

Guerrero." Id. at 2–3.  Over the Government's opposition, the immigration judge released Doe on a bond of $2,000.  Id. at 20.  The immigration judge did not impose any additional conditions of release.  Id. ("It is hereby ordered that the respondent's motion for a bond be set in his case be granted.  The Court will set a bond of $2,000 given his indigent status.  End of oral decision.").

The parties do not dispute, however, that ICE agents did impose additional conditions of release on Doe.  On the date of his release, Doe was asked to sign an "ORDER OF SUPERVISION" issued by the Department of Homeland Security.  Dkt. No. 2-5.  This order imposes several additional conditions of release upon Doe:

- Upon the agency's request, Doe must "appear for medical or psychiatric examination."  Id. at 3.

- Doe must not travel outside New York for more than 48 hours "without first having notified this agency office of the dates and places, and obtaining approval from this agency office of such proposed travel."  Id.

- Doe must "provide information under oath about [his] nationality, circumstances, habits, associations and activities and such other information as the agency considers appropriate."  Id.

- Doe must "provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document."  Id. at 5.

- Doe must "provide ICE with written responses from the Embassy or Consulate regarding [his] request."  Id.

The order imposes several more conditions that the Court does not detail here.  Some of these conditions may sound familiar—they are word-for-word copies of the conditions in 8 U.S.C. § 1231(a)(3).  And the order of supervision also creates a deterrent: "Any violation of these

conditions may result in you being taken into Service custody and you being criminally prosecuted." *Id.*

  C. **The Agency Had Authority to Impose an Order of Supervision, And So Did Not Violate the APA**

  The Administrative Procedure Act provides that a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in excess of statutory . . . authority." 5 U.S.C. §§ 706(2)(A), (C). The Court must thus consider whether Congress has authorized ICE to impose the order of supervision.

  The Government relies on 8 U.S.C. § 1231 to justify the agency's action. In relevant part, § 1231(a)(6) provides that certain aliens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *See also Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 218) (explaining that § 1231 "addresses the 'removal period' for immigrants facing deportation"). The parties do not dispute that Doe falls within the category of aliens to which this provision applies. When Doe was released on bond, therefore, the statute gave the agency a clear command: he "shall be subject to the terms of supervision" in § 1231(a)(3). In other words, the immigration laws mandate that aliens like Doe be released only if an order of supervision is imposed. And the immigration laws also lay out the contours of such orders of supervision. Section 1231(a)(3) provides several mandatory "terms of supervision": the alien must periodically appear before an immigration officer, submit to medical exams, and give information about his circumstances and activities. *Id.* § 1231(a)(3)(A)–(D). And these are some of the very terms that appear in Doe's order of supervision. *See* Dkt. No. 2, Ex. 6 (listing these terms of supervision).

  The statute also provides the agency the authority to impose "reasonable written restrictions on the alien's conduct or activities." 8 U.S.C. § 1231(a)(3)(D). As discussed, the

agency used this authority to impose several more conditions in the order of supervision, such as limiting Doe's travel outside New York and requiring Doe to "furnish written notice" if he moves or starts a new job. Ex. 6 at 1. Doe does not argue that these conditions are unreasonable, and even if he did, such an argument would be unavailing, as they clearly fall within the agency's statutory authority.

Yet Doe maintains that the agency has no authority to impose an order of supervision, because he was released pursuant to the Third Circuit's decision, and not the process outlined in the agency's regulations. Dkt. No. 25 at 9 ("Doe was released from custody after a hearing held pursuant to *Guerrero-Sanchez* and not DHS or ICE."). True enough, he was not released in accordance with the process laid out in 8 C.F.R. § 241.4, which creates an intricate regulatory regime for bond determinations. And the regulation governing orders of supervision, 8 C.F.R. § 241.5, applies only for "alien[s] released pursuant to § 241.4." Because Doe was not released under § 241.4, Doe is correct that § 241.5 does not provide the agency authority to impose an order of supervision.

But the Court need not look to whether the agency acted within its *regulatory* authority—because the *statute itself* provides the power to impose Doe's order of supervision. As noted, Section 1231(a)(6) requires aliens like Doe to be subject "to the terms of supervision" in 1231(a)(3), which are the terms that the agency imposed upon Doe. In other words, not only did the agency act within its authority, it fulfilled its statutory requirement to impose an order of supervision. Indeed, the Supreme Court has recognized the agency's authority to impose orders of supervision in similar circumstances. *See Zadvydas v. Davis*, 533 U.S. 678, 695–96 (2001) (noting that agency can impose "supervision under release conditions that may not be violated.").

Doe also argues that the order of supervision is invalid because it was imposed by an ICE official and not the immigration judge. *See* Petition ¶ 68. However, the statute does not delegate the obligation to impose release conditions upon any particular individual in the agency, and thus leaves the exercise of this authority to the agency's discretion. *See* 8 U.S.C. §§ 1231(a)(6), (a)(3). Doe provides no authority for the proposition that only an immigration judge could impose such an order. To the contrary, the immigration judge himself recognized that the agency could impose an order of supervision upon Doe. At the bond hearing, the immigration judge stated "there's nothing that would prevent the Department itself from . . . putting the respondent on an ankle monitor such that they can track his movements and know where he is or even have a daily reporting requirement where he has to call in on a daily basis . . . ." Dkt. No. 26-1 at 20. The agency therefore did not exceed its statutory bounds because an ICE official entered the order of supervision.

In sum, the agency followed Congress's express mandate in imposing an order of supervision upon Doe. The agency therefore did not violate the Administrative Procedure Act, and Doe is not entitled to habeas relief on this basis.

**D. The Agency Did Not Violate Doe's Procedural Due Process Rights**

Doe next claims that he is entitled to habeas relief because the order of supervision, and the manner in which it was imposed, violates his procedural due-process rights. The Fifth Amendment's Due Process Clause forbids the Government from depriving any "person . . . of . . . liberty . . . without due process of law[.]" U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

The only concrete argument that Doe advances in favor of this theory is that "[n]either 8 U.S.C. § 1231 nor any law authorizes the [order of supervision.]". Petition ¶ 81. However, for the reasons explained above, Doe flips the statutory framework—not only do the immigration laws permit such an order of supervision, they require it.

Doe also cites *Mathews v. Eldridge*, 424 U.S. 319 (1976), in support of his argument. Petition ¶¶ 58, 80; Doe Reply Br. at 8. However, he never explains why the *Mathews* balancing test, which governs procedural due-process challenges like this one, weighs in his favor. And even on independent review, it does not. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, although the private interest is significant, it is less substantial than if Doe were actually detained. *Cf. Pucha Quituizaca v. Barr*, No. 20-cv-403 (LJV), 2020 WL 3166732, at *4 (W.D.N.Y. June 15, 2020). There is little risk of erroneous deprivation, as the parties do not dispute that Doe falls within the class of aliens to which § 1231 applies, and thus his release requires a mandatory order of supervision. And the Government has several interests, such as ensuring aliens do not abscond, in imposing orders of supervision like this one. So even on an independent application of the *Mathews* test, Doe has not established an actionable deprivation of his rights.

In short, the agency did not violate Doe's procedural due-process rights, so he is likewise not entitled to habeas relief on this basis.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Doe's motion to proceed under pseudonym, but DENIES his petition for a writ of habeas corpus. This resolves Dkt. No. 2. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: August 16, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge